**LIFE INSURANCE COMPANY OF the SOUTHWEST and Texas Steel Company, Appellants,**

**v.**

**M.C. BRISTER, Jr., on Behalf of Himself and all Others Similarly Situated, Appellees.**

No. 2–85–062–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 18, 1986.

Shannon, Gracey, Ratliff & Miller and John H. Hudson, III, and Brown, Herman, Scott, Dean & Miles and J. Lyndell Kirkley, Fort Worth, for appellants.

Law Offices of Wallace Craig, P.C., and W. Brice Cottongame, Fort Worth, for appellees.

## OPINION

JOE SPURLOCK, II, Justice.

This is an interlocutory appeal, pursuant to TEX.REV.CIV.STAT.ANN. art. 2250 (Vernon Supp.1986), from an order determining that this case should be maintained as a class action under TEX.R.CIV.P. 42. The trial court designated M.C. Brister, Jr. (hereinafter referred to as appellee) to represent a class of employees of appellant, Texas Steel Company. The employees in the class were those who received workers' compensation benefits but did not receive the disability benefits provided under the Employee Benefit Plan issued by appellant, Life Insurance Company of the Southwest. The class action claim alleges breach of contract and misrepresentation.

We affirm the trial court's order certifying this class.

Appellants raise three points of error challenging the proceedings at the hearing and the certification order. In points of error one and two, appellants contend that the trial court abused its discretion in certifying this case as a class action because: (1) the appellee made no showing that this case is maintainable as a class action under the requirements of TEX.R.CIV.P. 42(b); and (2) the proper application of law to the undisputed facts in this case establishes that this case is not maintainable as a class action under any of the provisions of TEX. R.CIV.P. 42(b). In the third point of error, appellants argue that the trial court erred in refusing to allow the introduction of evidence about, and the cross-examination of appellee concerning, the settlement of a lawsuit in the Federal District Court that involved claims made on the same basis and facts as those involved in this state court lawsuit.

Appellee's claim of breach of contract and misrepresentation involves the accident and sickness weekly benefits under the Employee Benefit Plan, Plan No. 902, issued by Life Insurance of the Southwest, as provided to Class No. 2 employees of the Texas Steel Company since January 1, 1978. Class No. 2 covers only full-time hourly employees. For these employees, the Employee Benefit Plan provides accident and sickness weekly benefits in the following amounts:

Weekly Benefits will be paid commencing with the

1. 1st day of disability due to accidental bodily injury or the

2. 4th day of disability due to sickness Weekly Benefits are payable for a maximum period of

1. 13 weeks of disability due to sickness,

2. 26 weeks of disability due to accidental bodily injury

Weekly Benefits payable: $80.00

If the total amount of indemnity payable as Workmen's Compensation and A & S Benefits under this Plan exceeds 66⅔% of the employee's earnings the amount of A & S benefit will be reduced so that the total payment will not exceed 66⅔% of earnings.

In order to receive these accident and sickness weekly benefits, the Employee Benefit Plan requires notice and proof of claim according to the following provisions:

Written notice of injury or of sickness upon which claim may be based must be given to the Plan within thirty days of the date of the commencement of the first loss for which benefits arising out of each such injury or sickness may be claimed.

Notice given by or in behalf of the covered person to the Plan at its Executive Office or to any authorized agent of the Plan with particulars sufficient to identify the covered individual, shall be deemed to be notice to the Plan. Failure to furnish notice within the time provided in the Plan shall not invalidate any claim if it shall be shown not to have been reasonably possible to furnish such no-

tice and that such notice was furnished as soon as was reasonably possible.

The Plan, upon receipt of the notice required by the Plan, will furnish to the claimant such forms as are usually furnished by it for filing proof of loss. If such forms are not so furnished within fifteen days after the Plan receives such notice, the claimant shall be deemed to have complied with the requirements of the Plan as to proof of loss upon submitting, within the time fixed in the Plan for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

Affirmative proof of loss of time on account of disability or of hospital confinement for which claim is made must be furnished to the Plan within ninety days after the termination of the period for which claim is made. Affirmative proof of any other loss on which claim may be based must be furnished to the Plan not later than ninety days after the date of such loss.

The original 1978 Employee Benefit Plan stated that the appellants would pay the accident and sickness weekly benefits only under the following terms:[1]

Upon receipt of notice and due proof as required herein, that any employee, while covered for Accident and Sickness Weekly Benefits under the plan shall have become wholly and continuously disabled so as to be prevented thereby from performing any and every duty pertaining to his employment, as a result of any accidental bodily injury or any sickness and that during the period of such disability such employee shall have been under the regular and direct care of a licensed physician and surgeon;

The Plan agrees to pay, subject to the terms and conditions hereof, Weekly Benefits for the period during which the employee is so disabled and under such care; provided, however, that

1. Weekly Benefits of the amount specified in the Schedule of Benefits shall be paid commencing with the applicable day of disability specified in the Schedule of Benefits, and

2. In no event will such Weekly Benefits be paid for longer than the applicable maximum period, specified in the Schedule of Benefits, for any one continuous period of disability whether due to one or more causes, for all successive periods of disability due to the same or related cause or causes which are separated by less than two weeks, of continuous, full-time, active work, except that if weekly benefits are payable because of injury as provided in 1. above, the maximum period shall be two (2) times that shown in the Schedule of Benefits.

If the employee returns to full-time, active work for a continuous period of at least two weeks, any subsequent disability shall be deemed a new disability irrespective of its cause or causes.

In no event will such Weekly Benefits be paid for any disability caused by pregnancy.

In his breach of contract claim, appellee contends that he and other Texas Steel Company employees suffered accidental bodily injury and/or sickness entitling them to benefits from workers' compensation and from the Employee Benefit Plan, but that the appellants failed to pay the required benefits under the Plan. Appellee alleges that all conditions precedent to the liability of appellants under the Plan were performed and had occurred, except in cases where the appellants' acts induced these employees not to perform.

Appellee also claims that the appellants made various misrepresentations concerning the accident and sickness weekly benefits of the Employee Benefit Plan which constituted violations of the Unfair Competition and Unfair Practices provisions in the Texas Insurance Code, TEX.INS.CODE

---

1. These coverage provisions were amended effective February 1, 1983 to exclude accidental bodily injury arising out of the course of employment and covered by workers' compensation, but the new provisions do not apply to the claims in this case.

ANN. art. 21.21, sec. 4 (Vernon 1981), the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), TEX.BUS. & COM. CODE ANN. sec. 17.41 *et seq.* (Vernon Pamph.1986), and the Unfair Claim Settlement Practices Act, TEX.INS.CODE ANN. art. 21.21-2 (Vernon 1981).[2] Accordingly, appellee claims that each injured class member is entitled as a matter of law to receive three times the amount of actual damages sustained as a result of appellants' misrepresentations.

In his misrepresentation claim in the original petition, appellee refers to a paragraph in a booklet prepared and distributed by the appellants to all active Texas Steel Company employees in the first quarter of 1979, which describes the accident and sickness weekly benefits under the Employee Benefit Plan. This paragraph states:

> Weekly benefits are payable in the event of loss of earning due to accident or sickness which prevents you from performing any and every duty pertaining to your employment. For occupational accident or sickness, the difference between worker's compensation and the weekly indemnity maximum shown in the Schedule of Benefits will be paid.[3]

Appellee claims that this paragraph does not accurately reflect the provisions of the Plan contract and therefore constitutes a misrepresentation to the Texas Steel Company employees. In the same paragraph of his original petition, appellee also alleges that in addition to the misrepresentation in the employee booklet, various agents and representatives of appellants misrepresented to the class members the benefits due under the Employee Benefit Plan.

In his Motion for Class Certification, appellee claims to represent all employees of Texas Steel Company who were entitled to receive both workers' compensation benefits and $80 per week of disability and/or sickness benefits under the Employee Benefit Plan, but who did not receive these weekly benefits for the period from January 1, 1978 until December 31, 1981. At the hearing on his Motion for Class Certification, appellee relied solely on his own testimony and on the answers of appellant Texas Steel Company to his First Set of Interrogatories.

The answers to the First Set of Interrogatories, introduced into evidence at the certification hearing, reveal that: (1) from 1979 to 1981, there were 146 Texas Steel Company employees who received workers' compensation benefits; (2) for the same time period, only one of these employees received accident and sickness weekly benefits under the Employee Benefit Plan; and (3) the employee benefit booklet was distributed to all active employees of Texas Steel Company in the first quarter of 1979.

At the certification hearing, appellee testified that he had been injured and disabled while working for Texas Steel Company and that he had received workers' compensation benefits but had never received the $80 per week in accident and sickness benefits under the Employee Benefit Plan. He also testified that he learned of the weekly benefits under the Plan from his union representative. On cross-examination, appellee stated that he personally knew about the injuries of three to five of the employees listed in the interrogatories and that based on his conversations with other employees he had personal knowledge that at least fifty percent of the employees listed in the interrogatories had not received any benefits from Life Insurance Company of the Southwest.

Several times during the certification hearing, appellants tried to discuss the settlement of a class action lawsuit in the U.S. District Court for the Northern District of Texas, Civil Action No. CA 4-81-667-K, that was based on claims similar to this

---

**2.** We do not consider any questions arising under the Unfair Claim Settlement Practices Act because there is no private cause of action under this Act. *Lone Star Life Ins. Co. v. Griffin,* 574 S.W.2d 576, 580-81 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.).

**3.** Appellee quotes this paragraph in his original petition. The 1979 employee booklet, however, was not introduced into evidence at the certification hearing.

state action. The exhibits (that were not received into evidence) show that appellee was a named party in this federal class action representing the same class against the same defendants in a breach of contract claim for failure to provide the weekly benefits under the terms of the Employee Benefit Plan and a collective bargaining agreement. These exhibits also show that on May 24, 1984, this federal lawsuit was dismissed with prejudice pursuant to a settlement agreement, although appellee does not appear as a named plaintiff in the dismissal order. The trial judge during the certification hearing in the instant case indicated that he had read the file on the federal proceedings and denied all evidence and testimony concerning the federal lawsuit because it did not have any bearing on the certification of the class in the state lawsuit.

On February 13, 1985, the trial court in the case before us certified this class, designating appellee as the representative of "the class of those employed by Texas Steel Company who received Workers' Compensation benefits but did not receive the disability benefits which were provided for through Life Insurance Company of the Southwest." The order does not indicate which provisions of TEX.R.CIV.P. 42(b) it relied upon in granting this certification.

In points of error one and two, appellants contend that the trial court abused its discretion in granting the certification order for this class and therefore this order should be reversed and judgment should be rendered denying any class action. In their first point of error, appellants claim that appellee failed to meet his burden of proof on the maintainability of this class action under any of the provisions of TEX. R.CIV.P. 42(b). In their second point of error, appellants assert that a proper application of the law to the facts before the court establishes that this case is not maintainable as a class action under any of the provisions of TEX.R.CIV.P. 42(b).

■ Our review of the trial court's determination that this case should proceed as a class action is limited to determining whether the trial court abused its discretion. *Horton v. Goose Creek Ind. School Dist.*, 690 F.2d 470, 483 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); *RSR Corp. v. Hayes*, 673 S.W.2d 928, 930 (Tex.App.—Dallas 1984, writ dism'd); *Amoco Production Co. v. Hardy*, 628 S.W.2d 813, 816 (Tex.App.—Corpus Christi 1981, writ dism'd). An abuse of discretion in certifying class actions has been found where the trial court has failed to properly apply the law to the undisputed facts. *RSR Corp.*, 673 S.W.2d at 930; *Amoco Production Co.*, 628 S.W.2d at 816. In applying the law in this case, this court recognizes that TEX.R. CIV.P. 42 is patterned after the federal class action rule, FED.R.CIV.P. 23, and that the federal decisions and authorities interpreting rule 23 are persuasive in interpreting the Texas class action rule. *RSR Corp.*, 673 S.W.2d at 931–32.

■ At the certification stage, the burden of proof is on the plaintiffs to establish their right to maintain an action as a class action. *E.E.O.C. v. D.H. Holmes Co., Ltd.*, 556 F.2d 787, 791 (5th Cir.1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978). TEX.R.CIV.P. 42(c)(1) provides in part that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall, after hearing, determine by order whether it is to be so maintained." This provision requires the proponent of a class action to both plead the elements of a class action found in TEX.R.CIV.P. 42 and prove those elements at a hearing as soon as practicable after the petition is filed. *Mahoney v. Cupp*, 638 S.W.2d 257, 260 (Tex.App.—Waco 1982, no writ); *Harden v. Colonial Country Club*, 634 S.W.2d 56, 57 (Tex.App. —Fort Worth 1982, writ ref'd n.r.e.).

In order to meet this burden, proponents of the class action must satisfy all the requirements for certification found in section (a) of TEX.R.CIV.P. 42 and show that the proposed class falls within one of the subsections of TEX.R.CIV.P. 42(b). Rule 42 provides, in pertinent part:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class had acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) where the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In this appeal, appellants do not challenge appellee's satisfaction of the four prerequisites to a class action listed in section (a) of rule 42. Appellants, however, contend that appellee wholly failed to offer any probative evidence that would bring this case within one of the classifications of rule 42(b) and that none of these classifications is applicable in this case.

At various points in this case, appellee has asserted that his cause of action is maintainable as a class action under either subsections (b)(1)(A), (b)(1)(B) or (b)(4) of TEX.R.CIV.P. 42. Subsection (b)(2) is not applicable to this case because appellee never pleaded it and appellee does not seek injunctive relief. Subsection (b)(3) is not applicable here because it was not pleaded and this case does not involve the type of specific property referred to in this rule.

We find that appellee met his burden of proof on the maintainability of this class action by showing that the Texas Steel employees qualified as a class under subsection (b)(4) of TEX.R.CIV.P. 42. In applying the law established in rule 42(b)(4) to the facts of this case, we find no error or abuse of discretion by the trial court in certifying this class.

■ Subsection (b)(4) of the Texas class action rule is identical to FED.R.CIV.P. 23(b)(3). The Advisory Committee's Note to subsection (b)(3) of the federal class action rule states that the purpose of this subsection is to "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Proposed Rules of Civil Procedure*, 39 F.R.D. 69, 102–103 (1966). Although the degree of affiliation among

class members may not be as close under this subsection than in the other classifications of maintainability in FED.R.CIV.P. 23(b) and TEX.R.CIV.P. 42(b), this subsection is designed to prevent the deterioration of the class action into multiple lawsuits. *Id.* at 103; *see Bailey v. Sabine River Authority,* 54 F.R.D. 42, 43 (W.D.La.1971). Accordingly, this subsection has two requirements: (1) the common issues of law or fact of the case must predominate over the issues requiring individual adjudication for each class member; and (2) the class action must be superior to any other available methods for the fair and efficient adjudication of the controversy. It is only where this predominance of the common issues exists that the economies of a class action can be achieved and the splintering into numerous individual trials can be avoided. *Proposed Rules of Civil Procedure,* 39 F.R.D. at 103.

■ Questions common to the class are those questions which, when answered as to one class member, are answered as to all class members. *RSR Corp.,* 673 S.W.2d at 930; *Amoco Production,* 628 S.W.2d at 816. Although the meaning of "predominate" is not clear under the terms of this rule, it is clear that the existence of common questions in a claim is not in itself sufficient for class certification and the court has a duty to evaluate the relationship between the common and individual issues in each case to be certified under this subsection. *See* 7a Wright, Miller & Kane, *Federal Practice and Procedure: Civil* sec. 1778, at 522. The test for the courts in evaluating the predominance issue is not whether the common issues outnumber the individual issues, but instead whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Republic Nat. Bank of Dallas v. Denton & Anderson Co.,* 68 F.R.D. 208, 215 (N.D.Tex.1975). If common issues predominate, then a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim.

*Bailey v. Sabine River Authority,* 54 F.R.D. at 43.

■ In determining whether class action is superior to other available methods, the court must consider what other procedures exist for disposing of the dispute and compare these to the judicial resources and potential prejudice to absent class members involved in pursuing the class action. *See* 7a Wright, Miller & Kane, *Federal Practice and Procedure: Civil* sec. 1779, at 546. The alternatives to class action usually involve remission for individual adjudication and the availability and practicality of joinder and intervention.

■ In order to decide whether the common issues predominate, the court must initially identify the substantive law issues that will control the outcome of the litigation. *State of Ala. v. Blue Bird Body Co. Inc.,* 573 F.2d 309, 316 (5th Cir.1978); *Amoco Production,* 628 S.W.2d at 816. The purpose of the court's inquiry into the substantive law issues is to determine whether the character and nature of the case satisfies the requirements of the class action procedural rules; the purpose is not to weigh the substantive merits of each class member's claim. *Klein v. Henry S. Miller Residential Services,* 94 F.R.D. 651, 655 (N.D.Tex.1982). It is well-established that it is inappropriate for the trial court to try the substantive merits of the class proponents' claim when considering their motion for class certification. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Huff v. N.D. Cass Company of Alabama,* 485 F.2d 710, 712 (5th Cir.1973).

■ Though class proponents in meeting class action requirements must do more than merely allege that the requirements have been met and must at least show some facts to support certification, class proponents are not required to prove a prima facie case in order to be certified as a class. *Aiken v. Neiman-Marcus,* 77 F.R.D. 704, 704–705 (N.D.Tex.1977). Maintainability of a class action may be determined on the basis of the pleadings, though

the class certification determination usually should be predicated on more information that the complaint itself affords. *Huff,* 485 F.2d at 713. Class proponents generally are not required to make an extensive evidentiary showing in support of a motion for class certification:

So long as [the trial judge at the class certification hearing] has sufficient material before him to determine the nature of the allegations, and rule on compliance with the Rule's requirements, and he bases his ruling on that material, his approach cannot be faulted because plaintiffs' proof may fail at trial.

*Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975); *see also Turner v. First Wisconsin Mortg. Trust,* 454 F.Supp. 899, 909 (E.D.Wisc.1978).

In the class certification case before us, appellee is claiming that the appellants, through breach of contract and misrepresentation, have denied each member of the proposed class their rightful benefits under the accident and sickness provisions of the Employee Benefit Plan. Both in his original petition and his motion for class certification, appellee alleges that each member of the class was entitled to these benefits which were not paid by appellants. According to appellee, the predominant questions of law or fact applicable to this class are:

1) were these employees entitled under Plan 902 to receive the Accident and Sickness benefits pursuant to the plan, and

2) was the failure of Texas Steel Company and Life Insurance Company of the Southwest to pay those benefits a breach of contract and violation of the Deceptive Trade Practices Consumer Protection Act, Unfair Settlement Practices Act and Article 2121 of the Texas Insurance Code.

Appellee emphasizes in his brief that, under his theory of the case, "[o]ne interpretation of [the Employee Benefit Plan] would be binding on all the remaining members of the class."

Consequently, the predominant common issue as presented by appellee's claim is whether the Employee Benefit Plan can be interpreted to automatically entitle each member of the proposed class to the accident and sickness weekly benefits based merely on the class member's status as a Texas Steel employee who received Workers' compensation benefits after a job-related injury. According to the appellee, the only issue requiring individual inquiries regarding each class member is the amount of damages to be awarded, and this can be easily and quickly calculated according to the number of weeks that the class member received workers' compensation. In support of his motion for class certification, appellee has shown that Texas Steel employees were covered by an Employee Benefit Plan including weekly payments for accident and sickness, and that 145 employees covered by this plan were injured but failed to receive these benefits.

Appellants argue that the common issues of law and fact of this case do not predominate over the issues requiring individual adjudication for each class member. Under appellants' interpretation of appellee's cause of action, individual proof would be required in the case of each class member to show: (1) whether the class member had adequately presented proof of his claim as required by the Employee Benefit Plan or whether he had been induced not to present proof of his claims due to misrepresentations by appellants; (2) what understanding each class member had of the terms of the Employee Benefit Contract; and (3) how the appellants misrepresented the Plan to each class member and whether the alleged misrepresentation was the producing cause of injury to that particular class member.

The difficulty with appellants' argument is that it does not address appellee's contention that, under one interpretation of the Employee Benefit Plan, all Class 2 Texas Steel employees were automatically entitled to receive accident and sickness weekly benefits to the extent that they had received workers' compensation for job-related injuries. If appellee is able to prove this theory at trial, then the questions that ap-

pellant claims would predominate would in fact be moot.

 For the court to find that common issues predominate in a consumer class action including fraud or misrepresentation, there must be "a *well-defined community of interest* in the questions of law and fact involved." *Vasquez v. Superior Court of San Joaquin,* 94 Cal.Rptr. 796, 801, 484 P.2d 964, 969 (1971) (en banc) (emphasis added); *see generally,* Annot., 53 A.L.R.3d 534 (1973). In its discussion of the predominance requirement of FED.R. CIV.P. 23(b)(3), the Advisory Committee's Note delineates which types of fraud qualify for class action. Fraud perpetrated on numerous persons through the use of similar misrepresentations may be suitable for class action; fraud in which there were material variations in the representations made or in the kinds or degrees of reliance involved are not suitable for class action. *Proposed Rules of Civil Procedure,* 39 F.R.D. at 103.

 Several courts have denied certification in consumer class actions where the alleged misrepresentations or fraud and reliance thereon have varied in each consumer transaction, thereby creating different elements of proof and different defenses for each class member. *See Edelman v. Lee Optical Co.,* 24 Ill.App.3d 216, 320 N.E.2d 517 (1974); *Ballen v. Anne Storch International ASTI Tours, Inc.,* 46 A.D.2d 643, 360 N.Y.S.2d 436 (1974); *see generally* Annot., 53 A.L.R.3d 534 (1973). In cases where the misrepresentations vary in each transaction, the individual issues predominate and the class action would disintegrate into numerous individual trials. This does not mean, however, that claims of misrepresentation involving many separate transactions cannot be certified as class actions. Consumer class actions involving numerous separate transactions may still be found to have sufficient community of interest so long as class members are not required to individually litigate numerous and substantial questions to determine each member's right to recover

subsequent to the ruling on the class action issues. *Vasquez,* 94 Cal.Rptr. at 801, 484 P.2d at 969; *see also Hayna v. Arby's, Inc.,* 99 Ill.App.3d 700, 55 Ill.Dec. 1, 425 N.E.2d 1174 (1981); *Compact Electra Corp. v. Paul,* 93 Misc.2d 807, 403 N.Y. S.2d 611 (Sup.Ct.1977); *see generally* Annot., 53 A.L.R.3d 534 (1973).

 We find that there was sufficient material before the trial judge in this case to justify the finding that this class is maintainable under TEX.R.CIV.P. 42(b)(4). The predominant common issues for the trial judge to determine in this case as presented by the appellee are: (1) whether the class members were automatically entitled to receive the accident and sickness weekly benefits under the Employee Benefit Plan: and (2) whether the appellants' failure to pay these benefits constituted a breach of contract and a violation of the Deceptive Trade Practices Act and Article 21.21 of the Texas Insurance Code. Appellee claims that, under his interpretation of the Employee Benefit Plan, these issues when answered as to one member of the class will resolve the dispute as to all members of the class. The determination of whether there is any merit to appellee's claim that each class member was automatically entitled to the accident and sickness benefits is a matter for adjudication at trial in this case, and is not a matter for consideration at the preliminary class certification proceeding. *Eisen,* 417 U.S. at 177–78, 94 S.Ct. at 2152. If appellee's claim is indeed meritorious, then clearly the resolution of these 145 claims by class action is superior to any other methods of adjudication.

 When the trial court makes a determination of class status at an early stage of the proceeding before supporting facts are fully developed, it should err in favor and not against the maintenance of the class action since the class certification order is always subject to modification should later developments during the

course of the trial so require.[4] *Jones v. Diamond,* 519 F.2d 1090, 1098–99 (5th Cir. 1975); *see* 7B Wright, Miller & Kane *Federal Practice and Procedure: Civil* sec. 1785, at 89. As one court has pointed out, under the class action rule, "the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case ... [and] must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

■ In cases where it appears that the common issues *may* predominate over the individual issues, the most efficient approach for the trial court is to allow class certification at the present time subject to a motion by the defendants after the case has developed to dissolve the class on the grounds that the common questions are not predominant at trial. *Bryan v. Amrep Corp.,* 429 F.Supp. 313, 320 (S.D.N.Y.1977). This approach is preferable because of the immediate needs of notification and coherent representation of the class members at the early stages of the litigation. *Id.*

In the case before us, although the appellee had not fully developed the theory of his case at the time of the class certification proceeding, we find the allegations and evidence presented by appellee on the issue of class certification provide a reasonable basis for the trial court's certification order. If it becomes apparent at trial that appellee's theory of the case has no merit and that common questions will not predominate over individual issues, then the trial court may decertify this class under TEX.R.CIV.P. 42(c)(1). In light of the preference given to favoring class actions by the majority of courts, we are unable to find any abuse of discretion by the trial court in granting the class certification or-

der in this case. Appellants' points of error one and two are therefore overruled.

■ In point of error three, appellants contend that the trial court committed reversible error by refusing to allow the introduction of evidence and the cross-examination of appellee concerning the settlement of a federal class action lawsuit that was based on claims closely similar to this suit. To obtain reversal of a judgment based upon an error in the trial court, the appellant has a two-pronged burden. First, he must show that there was, in fact, error, and secondly, that such error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex.1962); *Fulmer v. Thompson,* 573 S.W.2d 256, 265 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.); TEX.R.CIV.P. 434, 503.

■ The policy of Texas courts is to refuse to set aside or reverse judgments for errors of law committed during the trial unless, in the sound judgment of the appellate court, the errors contributed in a substantial way to bring about an unjust result. *Duncan v. Smith,* 393 S.W.2d 798, 804 (Tex.1965). It is the responsibility of the appellate court to determine from the record as a whole whether the appellant was harmed by the error in the trial court. *Gomez Leon v. State,* 426 S.W.2d 562, 565 (Tex.1968); *Smith v. Smith,* 620 S.W.2d 619, 625 (Tex.Civ.App.—Dallas 1981, no writ).

We find that the trial court erred in refusing to allow the introduction of evidence and the cross-examination of the appellee concerning the federal class action lawsuit. These errors, however, do not present sufficient grounds for reversal of the class certification order because appellants failed to show that exclusion of this evidence and testimony was reasonably calculated to cause and probably did cause an improper judgment.

---

**4.** Subsection (c) of the Texas class action rule provides, in pertinent part:

 (1) As soon as practicable after the commencement of an action brought as a class action, the court shall, after hearing, deter-

mine by order whether it is to be so maintained. *This determination may be altered, amended, or withdrawn at any time before final judgment....*

TEX.R.CIV.P. 42(c)(1) (emphasis added).

At the certification hearing, appellants offered two exhibits into evidence relating to the federal lawsuit on this claim. The first exhibit is a certified copy of the "Plaintiff's Original Complaint" in Civil Action No. CA 4–81–667–K before the United States District Court for the Northern District of Texas, filed December 17, 1981. The exhibit shows that appellee was one of the named parties in a federal class action suit representing substantially the same class against the same defendants in a breach of contract claim for failure to provide the weekly benefits under the terms of the Employee Benefit Plan and a collective bargaining agreement. The second exhibit is a certified copy of the federal district court's May 24, 1984 order dismissing the federal lawsuit with prejudice pursuant to a settlement agreement. Appellee does not appear as a named party in the dismissal order. The trial judge in this case denied the admission of these documents at the certification proceedings because he had read the file on the federal lawsuit and found that the federal litigation had no bearing on the certification of the state action.

The issue here is whether the trial judge erred in ruling that these exhibits are irrelevant to the state class action certification proceeding. Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the suit more or less probable than it would be without the evidence. TEX.R.EVID. 401.

■■■ This Court finds that the evidence on the settlement of the federal class action in this case is directly relevant to questions pertaining to the maintainability of this state class action under TEX.R.CIV.P. 42(b)(4). *See Kamm v. California City Development Co.,* 509 F.2d 205, 212 (9th Cir.1975) (Class certification denied because proposed federal class action duplicative of settlement terms of closely similar state class action.) Subsection (B) of rule 42(b)(4) specifically provides that a factor to be considered in making the predominance and superiority determinations is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." TEX.R.CIV.P. 42(b)(4)(B).

■■■ At the certification hearing, appellants also attempted to cross-examine appellee concerning the nature of his involvement in the prior federal class action litigation. Appellants were attempting to learn the reason that appellee withdrew as a named party from the federal lawsuit. On appellee's objection, the judge prohibited all cross-examination on the nature of appellee's involvement in the federal class action, ruling that this testimony would be irrelevant to the certification of the state class action. Appellants made no offer of a Bill of Exception.

The scope and extent of cross-examination of a witness is a matter that lies largely within the discretion of the trial court and its rulings will not be disturbed unless an abuse of discretion is shown. *Southern Pac. Transp. Co. v. Peralez,* 546 S.W.2d 88, 96 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *Austin Road Company v. Ferris,* 492 S.W.2d 64, 74 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). Where cross-examination testimony has been excluded, however, it is not necessary for the appellant to show what answer was expected to be elicited; appellant only need show that the substance of the evidence was apparent from the context within which questions were asked. TEX.R.EVID. 103(a)(2). *See also Hartford Accident and Indemnity Co. v. Harris,* 138 S.W.2d 277, 278 (Tex.Civ.App.—Eastland 1940, writ dism'd). The question before this Court is whether the cross-examination questions were calculated to elicit relevant testimony.

■■■ We find all evidence concerning the prior federal class action litigation, including the excluded cross-examination testimony, is relevant to the determination of the maintainability of this class action under TEX.R.CIV.P. 42(b)(4). Information on the reasons for appellee's withdrawal as a representative party from the closely similar federal class action has a direct bearing on the questions in the state suit of wheth-

er the common issues predominate and whether the class action mode of litigation is superior. Furthermore, the nature of appellee's involvement in the federal class action may be determinative of whether his claims are typical of the class in the state action as required under TEX.R.CIV.P. 42(a)(3). A plaintiff who seeks to represent a class must adequately represent the interest of the class by showing that there are no differences in his interests and those of the class. *Billingsley v. Bachinskas*, 78 F.R.D. 407, 408–09 (N.D.Tex.1978); *see also Matthews v. Landowners Oil Ass'n.*, 204 S.W.2d 647, 651 (Tex.Civ.App.—Amarillo 1947, writ ref'd n.r.e.). Consequently, we find that the cross-examination questions were calculated to elicit relevant testimony.

In summary, we find that the trial court erred in excluding the evidence and cross-examination testimony concerning the prior federal class action lawsuit. This is not reversible error, however, because appellants failed to meet their burden of showing that these errors were reasonably calculated to cause and probably did cause the rendition of an improper judgment. We have not found anything in the record of this class certification proceeding that indicates that the trial court's error in excluding the evidence and testimony on the prior federal class action suit contributed in a substantial way to bring about an unjust result.

Although evidence of prior litigation and settlements may be relevant to the determination of whether a class should be certified, such evidence in itself may not necessarily be dispositive on this issue. As the record in this class certification proceeding shows, the trial judge was familiar with the prior settlement of the federal class action

suit[5] and did not find anything in the record before him that indicated that the settlement of the federal lawsuit necessitated the denial of the state class certification. As we have already ruled in points of error one and two, the trial judge had sufficient materials before him to support his class certification order and under the facts of this case he did not abuse his discretion in certifying this class. Appellants, in the certification proceedings and in this appeal, have failed to show precisely what matters of fact or law derived from the evidence and testimony they sought to introduce would require and necessitate a different outcome in this class certification proceeding. Any error in not admitting or in excluding evidence becomes immaterial where the offered evidence does not affect the verdict and judgment rendered. *Schutz v. Southern Union Gas Co.*, 617 S.W.2d 299, 303 (Tex.Civ.App.—Tyler 1981, no writ).

Consequently, we find no reversible error in the trial court's exclusion of evidence and testimony concerning a prior federal class action suit. Appellant's point of error three is overruled.

The trial court's February 13, 1985 order certifying "the class of those employed by Texas Steel Company who received workers' compensation benefits but did not receive the disability benefits which were provided for through Life Insurance Company of the Southwest" is hereby affirmed.

KELTNER, J., recused.

---

5. This is not to say, however, that the trial judge had judicial notice of these exhibits. The judicial notice rule in Texas does not cover foreign judicial records and proceedings, and authenticated copies of such records and proceedings must be introduced into evidence. *Fender v. St. Louis Southwestern Railway Co.*, 513 S.W.2d 131, 134–35 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.), *cert. denied*, 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975). *See* TEX.R.EVID.

202, 901, 902. Consequently, the copy of the original petition in the federal lawsuit would have to be entered into evidence. Under TEX. R.EVID. 202, the trial court may on its own motion take judicial notice of court decisions of any jurisdiction in the United States. The trial court then could have taken judicial notice of the order dismissing the federal class action, though it did not take any formal measures to do so.