WEST TELESERVICES, INC.; West Telemarketing Corporation; West Telemarketing Corporation Outbound; and West Telemarketing Insurance Agency, Inc., Appellants,

v.

Richard CARNEY et al., Appellees.

No. 04–00–00323–CV.

Court of Appeals of Texas, San Antonio.

Nov. 1, 2000.

Rehearing Overruled Jan. 5, 2001.

Douglas W. Alexander, Julie A. Springer, Phyllis Pollard, Ray Donley, Scott, Douglass & McConnico, L.L.P., Austin, Nissa M. Sanders, Wallace B. Jefferson, Crofts, Callaway & Jefferson, P.C., San Antonio, for appellant.

Jeffrey A. Goldberg, San Antonio, Bernard Wm. Fischman, Richard Tinsman, Tinsman & Houser, Inc., Mark Louis Greenwald, Greenwald & Greenwald, P.C., San Antonio, for appellees.

Sitting: TOM RICKHOFF, Justice CATHERINE STONE, Justice KAREN ANGELINI, Justice.

Opinion by TOM RICKHOFF, Justice.

This is an accelerated appeal in which West Teleservices, Inc. ("WTI"), West Telemarketing Corporation ("Inbound"), West Telemarketing Corporation Outbound ("Outbound"), and West Telemarketing Insurance Agency, Inc. ("Agency") (collectively, the appellants) appeal an order granting class certification to Richard Carney and others (collectively, the appellees). In three points of error, the appellants assert the trial court erred in certifying the class because: (1) the certification order does not identify the causes of action, the factual claims, the common questions of law or fact, or a trial plan; (2) individual issues predominate over common issues; and (3) a class action is an inferior and unmanageable method of adjudicating this controversy.

## BACKGROUND

### The Parties

The appellees, who are the plaintiffs below and the class proponents, are employees of three telemarketing firms: Inbound, Outbound, and Agency. Inbound employees process incoming telephone calls generated by direct response advertising, direct mail, and print and radio. Outbound employees market products and services or conduct surveys by making outgoing calls to potential sales prospects. Agency employees verify and finalize sales of insurance products. The class size could number as many as 90,000 past and present employees.

Outbound and Inbound are independent companies, with separate officers, directors, and facilities, and with different policies, pay practices, and timekeeping procedures. Agency is also a separate company, but operates in the same facility as Outbound. Outbound provides payroll services for Agency. WTI is the parent company of Outbound and Agency.

### The Allegations Against Inbound

The Inbound employees assert that Inbound's practice of rounding clock-in and clock-out times at the beginning and end of their shifts to the nearest quarter hour resulted in them not being paid for all the time they worked. The employees also allege they are required to line up before their shift begins to hear information supplied by a lead telemarketer, but they are not paid for the time. The employees do not allege minimum wage or overtime violations. The employees are not seeking to be paid for time that they did not attend the pre-shift line-up or for time not doing "productive work ."

Inbound contends employees are not required to line up before the start of their shift, and any line-up time varies from day-to-day. Inbound contends employees are not disciplined if they do not line up and listen to information during the pre-shift time. When employees arrive one to seven minutes early, Inbound rounds the time to the start of the shift. When employees arrive eight or more minutes early, Inbound rounds the time to the preceding quarter hour. The same rounding practice is applied to clock-out times. Inbound argues that this practice is approved by the Department of Labor in its regulations interpreting the Fair Labor Standards Act ("FLSA").

The appellants contend the named plaintiffs knew from their first day of work that the company rounded clock-in and clock-out time. The appellants estimate it would cost approximately $3 million to pull the necessary records and calculate the amount of rounded time for each of the Inbound employees who are members of the certified class. Inbound contends there are no records to document which

employees stood in line pre-shift or for how long.

## The Allegations Against Outbound and Agency

The Outbound and Agency employees assert they should have been paid for the time between when they clocked in and the start of their shift. The employees do not allege minimum wage or overtime violations. They do not seek to be paid for time spent in personal activities after clocking in and before the start of their shift.

Outbound and Agency contend that employees are not required to be at their stations before the start of their shift, but they are required to be at their stations ready to begin work once the shift starts. Employees are encouraged to report to work early enough before the start of their shift so that they may begin work as soon as the shift starts. They are not required to perform compensable work between the time they clock in and the start of their shift. Unless an employee is specifically asked to report to work early, employees are not paid until the start of their shift when they begin making phone calls.[1] To calculate hourly pay, Outbound and Agency correct "long punches" to the start of shift. "Long punches" refer to early clock-in times of employees who arrive on the company's premises before they start work, clock in, and then engage in preliminary, personal, or social activities before the start of their shift. Clock-out times are not adjusted. Outbound and Agency argue that this practice is approved by the Department of Labor in its regulations interpreting the FLSA.

Outbound does not pay its employees solely on an hourly basis. Employees are paid the greater of their hourly wages for the week or the commissions they earned during the week. Rounding time would not affect an employee who earned the greater amount in commissions.

The appellants estimate it would take approximately 600 hours, at a cost of approximately $6 million, to pull the necessary records and calculate the amount of rounded time and the value of that time for each of the Outbound and Agency employees who are members of the certified class.

## The Lawsuit

The appellees filed suit against WTI, Inbound, Outbound, Agency, and two individual managers and one officer of Outbound and Agency. They asserted claims of quantum meruit, fraud, conspiracy to commit fraud, common law debt, conversion, conspiracy to commit conversion, civil theft, and conspiracy to commit civil theft. The petition stated the appellees were "not asserting any causes of action maintainable under any law or statute of the United States or any other federal cause of action." The appellees later dropped their conversion and fraud claims, but added a breach of contract claim. The basis of the implied contract claim was "that an employer subject to the [FLSA] ... is required to pay employees for all work performed and for all time during which an employee is present on the employer's premises and subject to its control or direction."

The appellees moved for class certification, and the appellants moved for summary judgment. Both motions were heard together. The court rendered summary judgment in favor of the appellants on the appellees' breach of express contract, civil theft, and conspiracy to commit theft causes of action. The court dismissed the individual defendants. The court informed the parties by letter that it would grant the appellees' motion for class certification, noting that its ruling "may raise questions in your minds regarding the parameters of the class." The appellants objected to the certification order on the grounds that it

---

1. These employees sell products by making telephone calls. They do not actually dial a telephone; instead, a computer (called an "automatic dialer") dials the calls. The automatic dialer does not start until the start of the shift.

was vague and did not identify the causes of action or factual complaints being certified. The appellants asked the court to specify in the order the causes of action or factual complaints.

The appellants requested findings of fact and conclusions of law, which the court asked appellees' counsel to prepare. After appellees' counsel declined to prepare the findings of fact and conclusions of law, the appellants filed a notice of past due findings of fact and conclusions of law. This appeal by the appellants followed. The appellees do not challenge the granting of the summary judgment in favor of the appellants.

## STANDARD OF REVIEW

■■■ An appellate court reviews the trial court's determination that a case should be certified as a class action using an abuse of discretion standard. *Health & Tennis Corp. of Am. v. Jackson*, 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.). The trial court abuses its discretion when it does not properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record. *Id.*

■■■ There is no automatic right to maintain a lawsuit as a class action. *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.). Instead, a trial court may certify a class action if the class proponent satisfies all four requirements of Texas Rule of Civil Procedure 42(a),[2] and at least one of the requirements

under Rule 42(b). *Id.* Although class proponents must do more than merely allege they fulfill the requirements of Rule 42, they are not required to prove a prima facie case or make an extensive evidentiary showing in support of a motion for class certification. *Id.* Here, the appellees relied on Rule 42(b)(4).[3] This portion of the Rule is satisfied if the class representatives show that the factual or legal issues common to the class predominate over issues affecting only individual members, a criterion known as "predominance," and that the class action is a superior method to fairly and efficiently adjudicate the controversy compared to other available methods, a criterion known as "superiority."

■■■ Trial courts enjoy a broad range of discretion in determining whether to maintain a lawsuit as a class action, but may not consider the substantive merits of the class claims in making a determination. *Id.* Certification is not irreversible, and the trial court may alter, amend, or withdraw class certification at any time before final judgment. *Morgan v. Deere Credit, Inc.*, 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994, no writ); Tex.R.Civ.P. 42(c)(1). However, trial courts must perform a "rigorous analysis" before ruling on a class certification to determine whether all the prerequisites to certification are met. *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex.2000).

## DISCUSSION

In their first issue on appeal, the appellants assert the trial court erred in certify-

---

**2.** Rule 42(a) provides as follows:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Tex.R.Civ.P. 42(a).

**3.** The class proponents here rely on Rule 42(b)(4), which provides, in part, "[T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Tex.R.Civ.P. 42(b)(4).

ing the class because the certification order does not identify the causes of action, the factual claims, the common questions of law or fact, or a trial plan. In their second issue, the appellants assert the trial court erred in certifying the class because individual issues predominate over common issues.

In *Bernal*, the Texas Supreme Court considered Rule 42(b)(4)'s predominance requirement to be "one of the most stringent prerequisites to class certification." *Id.* at 433. The Court noted that courts determine if common issues predominate by identifying the substantive issues of the case that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, those common to the class. *Id.* at 434. The test for predominance is not whether common issues outnumber uncommon issues but, "whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Id.* (quoting *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 610 (Tex.App.—Corpus Christi 1998, writ dism'd w.o.j.)). Common issues do not predominate if, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury. *Id.* Ideally, "a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim." *Id.* (quoting *Life Ins. Co. of the Southwest v. Brister*, 722 S.W.2d 764, 772 (Tex.App.—Fort Worth 1986, no writ)).

However, before a reviewing court can determine whether individual issues predominate over common ones, it must consider how to properly apply the predominance requirement. *Id.* The predominance requirement is intended to prevent class action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury

or severely compromise a party's ability to present viable claims or defenses. *Id.* But, the *Bernal* Court noted that the predominance requirement is not always rigorously applied. *Id.* The Court rejected the "certify now and worry later" approach to class certification, concluding that a cautious approach to class certification was essential. *Id .* at 435. Therefore, it is improper to certify a class without knowing how the claims can and will likely be tried. *Id.* (citing to *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996)).

The *Bernal* Court held that a trial court's certification order must indicate how the claims will likely be tried so that conformance with Rule 42 can be meaningfully evaluated. *Id.* The Court held that a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *Id.* Any proposal to expedite resolving individual issues must not unduly restrict a party from presenting viable claims or defenses without that party's consent. *Id.* "If it is not determinable from the outset that the individual issues can be considered in a manageable, time-efficient, yet fair manner, then certification is not appropriate." *Id.* at 436.

Here, the certification order stated, in part, as follows:

The common questions of law and fact to be determined are those relating to all aspects of activities that affect billable or payable time for said hourly compensated shift workers beginning with training and through actual work, including, but not limited to, "pre-shift" or "post-shift" activities which benefitted the Defendant employers, "rounding down" or "rounding up" or alteration of time records, and time paid for working extra hours.

The class-wide issues of fact and law shall *not* include any other complaints of the employees that are not related to billable or payable time, such as bonus-

es, incentives or discriminatory practices, if any. No relief is requested under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

The certification order does not identify the causes of action, how those causes of action would be tried, how liability for each of the four defendants would be determined, or how damages for each of the 90,000 plaintiffs would be determined. Because the trial court did not identify the substantive issues that would control the outcome of the trial, there is no meaningful way for this Court to evaluate whether the order meets the requirements of Rule 42. Nor is there any meaningful way to determine whether the trial court understood the claims, defenses, relevant facts, and applicable substantive law.

The appellants assert that, even with a trial plan, the appellees' claims cannot be tried as a class action because individual issues predominate over common issues. By way of example, the appellants argue that the elements of quantum meruit— whether the plaintiff rendered valuable services, whether the plaintiff expected to be compensated for those services, and whether the defendant knew the plaintiff expected to be compensated—all must be established on an individual plaintiff-by-plaintiff basis. The appellants contend that a judgment in favor of the appellees will not decisively settle the entire controversy because damages must be established on an individual plaintiff-by-plaintiff basis.

While we do not disagree with the general proposition that class certification is often inappropriate in cases involving varying kinds and degrees of reliance, we do not reach this issue because, again, the certification order does not identify the substantive issues that will control the outcome of the trial. Therefore, we cannot determine whether the issues raised by the appellees can be tried in a common fashion. The trial court had a duty to evaluate the relationship between the common and individual issues in this case before certify-

ing it under Rule 42(b)(4). *Brister,* 722 S.W.2d at 772. We do not reach the question of superiority because an incorrect predominance finding also implicates the court's superiority analysis. The greater number of individual issues, the less likely superiority can be established. The predominance/superiority inquiry must consider how the case will actually be tried as a class action to determine whether manageability problems prevent class litigation from being the superior mode of adjudication.

## CONCLUSION

The *Bernal* opinion removes the brinkmanship involved in some previous class action litigation. Now class proponents must specifically define the class and present a clear method of presentation of their case-in-chief, including identifying the causes of action and how liability and damages will be determined.

Here, the trial court's letter to the parties, which the certification order mirrored, recognized there may be questions "regarding the parameters of the class." The trial court was correct. *See General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 959 (Tex.1996) (stating that because the trial court believed "there [was] uncertainty as to whether a class action could be properly certified and maintained through trial because there [were] potentially substantial individual questions of fact and law and obstacles to the manageability of the action on a class basis," it should not have certified the class or approved the settlement). Because the certification order does not comport with the requirements of *Bernal,* we reverse the trial court's judgment, and remand for further proceedings.