In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00058-CV


______________________________




ALFORD CHEVROLET-GEO, ET AL., Appellants



V.



JETT JONES AND ENVO-TECH, INC., Appellees




 


On Appeal from the 115th Judicial District Court


Marion County, Texas


Trial Court No. 30-96




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Alford Chevrolet-Geo, et al. (Dealers), a group of over 600 car dealerships, appeal from an
interlocutory order (1) granting class certification to a group consisting of over a million individuals
who purchased cars from those dealerships after September 1, 1995. 

 This lawsuit was filed on behalf of a group of customers against a group of car dealerships,
alleging they made misrepresentations about the nature of a tax, the dealers inventory tax,
representing to consumers that it was a type of vehicle inventory tax the customer was required to
pay. The customers also allege the Dealers, as a group, engaged in a civil conspiracy to force,
coerce, or confuse consumers into paying a tax that was levied against and was properly payable by
the Dealers. 

 Extensive discovery has been completed. The trial court, after a hearing, certified a class of
consumers. The keystone of the lawsuit lies in the nature of the term used by each dealership to
describe the tax--and the allegations of an agreement among the new car dealers of the State of Texas
to charge that tax to the consumer. If the term dealers inventory tax was used in a sales document,
the court concluded the purchaser does not qualify as a plaintiff member of the class. If one of
twenty-nine other less accurate or descriptive terms was used to describe the charge, then an
individual qualifies as a member of the class. (The terms were taken from sales documents obtained
during discovery.)

Standard for Interlocutory Review of Class Certification

 An appellate court reviews a trial court's determination that a case should be certified as a
class action using an abuse of discretion standard. W. Teleservices, Inc. v. Carney, 37 S.W.3d 36,
40 (Tex. App.-San Antonio 2000, no pet.); Health & Tennis Corp. of Am. v. Jackson, 928 S.W.2d
583, 587 (Tex. App.-San Antonio 1996, no writ). The trial court abuses its discretion when it does
not properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when
its ruling is based on factual assertions unsupported by the record. Carney, 37 S.W.3d at 40.

 The Dealers' arguments center around their contention that the information provided to the
trial court did not support its conclusion that common issues predominate. (2)

 The arguments as set out by the Dealers focus on the question of whether the trial court
abused its discretion by deciding the plaintiffs had satisfied Rule 42(b)(4). That rule requires the
court to conclude that questions of law or fact common to the class predominate over questions
affecting only individual members and that class treatment is superior to other available methods for
the fair and efficient adjudication of the controversy. Tex. R. Civ. P. 42(b)(4); see Amchem Prods.,
Inc. v. Windsor, 521 U.S. 591, 615 (1997); Southwestern Ref. Co. v. Bernal, 22 S.W.3d 425, 433
(Tex. 2000). In making this determination, the trial court is required to perform a "rigorous analysis"
before ruling on class certification to determine whether all the prerequisites to certification are met. 
Bernal, 22 S.W.3d at 435. (3) 

 This rigorous analysis includes indicating how the claims will likely be tried so that
conformity with Tex. R. Civ. P. 42 can be meaningfully evaluated. Id. A court must understand the
claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful
determination of the certification issues. Id. 


Rule 42(a), (b)(4) (4)  

 The Dealers complain at length that the common issues do not predominate over questions
affecting only individual members. Specifically, they complain that proof of conspiracy will require
600 mini-trials and that each individual plaintiff will have to prove reliance separately in order to
recover on each plaintiff's Deceptive Trade Practices Act (DTPA) claims. Alternatively, the Dealers
argue that the defenses raised by each dealer will differ for each and every sale. Therefore, they
conclude, the requirements of Rule 42(b)(4) have not been met.

Predominance of Individual Issues

 In the terms of the analysis, we must apply the central theme of this appeal, which is that the
trial court abused its discretion by certifying the class because common issues do not predominate
as required by Rule 42(b)(4); or alternatively, that separate defensive issues would require
multitudinous mini-trials. (5) We do not review the record de novo, but we must determine whether
the trial court adhered to the rule's requirements in making its decision, based on the "rigorous
analysis" described above. 

 In deciding that matter, the trial court looks to see "if common issues predominate by
identifying the substantive issues of the case that will control the outcome of the litigation, assessing
which issues will predominate, and determining if the predominating issues are, in fact, those
common to the class." Bernal, 22 S.W.3d at 434. The test for predominance is not whether common
issues outnumber uncommon issues, but "whether common or individual issues will be the object
of most of the efforts of the litigants and the court." Id. "If, after common issues are resolved,
presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for
a single jury, then common issues do not predominate." Id. "Ideally, 'a judgment in favor of the
class members should decisively settle the entire controversy, and all that should remain is for other
members of the class to file proof of their claim.'" Id. 

 The predominance requirement "is intended to prevent class action litigation when the sheer
complexity and diversity of the individual issues would overwhelm or confuse a jury or severely
compromise a party's ability to present viable claims or defenses." Id.; Carney, 37 S.W.3d at 41.

 In this case, the trial court reviewed numerous affidavits presented by the parties and heard
arguments of counsel on this matter. Although appellants complain in passing that the court only
spent a few hours on the certification hearing, there is no authority requiring either an unnecessarily
lengthy hearing or live testimony. We find that submission of affidavits is adequate and believe that
in many certification efforts of either alleged or real complexity, written materials are both more
readily digested and analyzed by the court in reaching this decision. So that this may be
accomplished, we also note counsel will necessarily be quite reasonably required to provide to the
trial court the information they want considered early enough to allow the court to consider it. Late-filing of such documents should not occur, and the trial court would be well within its authority to
refuse to consider such in making its decision.

The Findings of the Trial Court

 The trial court found the following issues were predominant: (1) whether the plaintiff class
were consumers; (2) whether the charging of the vehicle inventory tax in addition to the sales price
is a false, misleading, or deceptive act or practice; (3) whether such acts were a producing cause of
damages; and (4) the amount of damages.

Conspiracy Claim

 Our review of the certification is to consider as one factor the evidence produced to show that
the issues involved are in common. One portion of the Dealers' argument takes the position there
is nothing to show that conspiracy can lie as to all members of the class. They take the position the
conspiracy cannot be proven generally, but that all elements must be proven separately as to each
defendant dealer. The elements of a civil conspiracy are (1) two or more persons, (2) an object to
be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more
unlawful, overt acts, and (5) damages as a proximate result. Operation Rescue-Nat'l v. Planned
Parenthood of Houston and Southeast Tex., Inc., 975 S.W.2d 546, 553 (Tex. 1998).

 As set out in the findings of the trial court, discovery shows that twenty-nine different terms
were used by the defendants other than the term dealers inventory tax. The customers allege that
those terms did not fully or accurately inform the customers about the nature of the tax and that those
terms actively misled the customers about the nature of the tax. The customers point to discovery
showing the common plan orchestrated by the Dealers' trade organizations to ensure that all dealers
charged the tax in the same manner and point to language in the organizations' literature and
seminars to show an absolute and clearly expressed intent to shift the cost of the tax directly to the
consumer. The plaintiffs allege the Dealers acted in a substantially uniform manner and caused them
damages. 

 A common question is raised in this case: the nature of the alleged wrongdoing and the way
in which it was accomplished--through the shifting of a tax against the dealer to the purchaser of the
vehicle. The documents and depositions obtained through discovery clearly reflect that the Dealers'
trade organizations designed the mode in which the tax would be presented to the purchaser and also
made it clear that the reason for doing it in this fashion was to add thirty to fifty dollars to the bottom
line of every sale.

 The fact that the specific term used to achieve that purpose differed in detail from dealership
to dealership (which is the focus of the Dealers' arguments) is not sufficient to show that the issue
is not common to all parties. This portion of the analysis finds support in the information provided
to the trial court.

 The Dealers also complain at length the trial court has obviously already decided the merits
of the case because, in its trial plan it refers to the terminology used by the various Dealers in
describing the "tax" as representing a "common thread of deceit" that will constitute class
membership. The Texas Supreme Court's opinion in the initial mandamus involving this case, In
re Alford Chevrolet-Geo, 997 S.W.2d 173, 183 (Tex. 1999), contains specific language suggesting
if discovery revealed evidence indicating that a common thread of deceit ran through the
representations, that would weigh in favor of certification. The trial court did not decide the case
on the merits, but only recognized there was evidence suggesting such a thread of deceit as an
underpinning for its certification.

Conspiracy Part II

 The Dealers also argue that individual issues predominate because the purchasers would have
to prove what each dealer knew about the tax: that each dealer individually understood the acts were
unlawful and that each dealer had a meeting of the minds with others to accomplish the acts.

 As recognized by the trial court in its trial plan, conspiracy claims are often proven not by
the details that testimony shows a defendant knew, but by proof of knowledge coupled with, or as
shown by, his or her action, and enjoyment of the fruits of the transactions. Further, in this case, the
allegations involve acts allegedly taken in unison by an entire category of car dealers.

 As this court recently recognized, it is not the agreement itself, but an injury to the plaintiff
resulting from an act done pursuant to the common purpose that gives rise to a cause of action for
civil conspiracy. Carroll v. Timmers Chevrolet, Inc., 592 S.W.2d 922, 925 (Tex. 1979); Lesikar v.
Rappeport, 33 S.W.3d 282, 301-02 (Tex. App.-Texarkana 2000, pet. denied). One without
knowledge of the object and purpose of a conspiracy cannot be a co-conspirator; he or she cannot
agree, either expressly or tacitly, to the commission of a wrong of which he or she is not aware. 
Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 857 (Tex. 1968);
Pairett v. Gutierrez, 969 S.W.2d 512, 516 (Tex. App.-Austin 1998, pet. denied).

 However, conspiracy may be (and often is) established by circumstantial evidence. Int'l
Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 581 (Tex. 1963); Lesikar, 33 S.W.3d at 302. 
The Texas Supreme Court has stated, 

 A conspiracy may be proven as well by the acts of the conspirators, as by anything
they may say, touching what they intended to do.


 The general rule is that conspiracy liability is sufficiently established by proof
showing concert of action or other facts and circumstances from which the natural
inference arises that the unlawful, overt acts were committed in furtherance of
common design, intention, or purpose of the alleged conspirators. 


 . . . . 


 . . . . It is not required that each and every act of a conspirator be shown to have been
in concert with the others or that it be established by direct evidence that all
combined at a given time prior to each transaction. Inferences of concerted action
may be drawn from joint participation in the transactions and from enjoyment of the
fruits of the transactions on the part of the . . . defendants.

Holloway, 368 S.W.2d at 581-82; Lesikar, 33 S.W.3d at 302.

 The conspiracy issue is common to all plaintiffs. The differences in the sales contracts are
relatively minor, and the claims raised against the Dealers are substantially identical. 

 The Dealers take the position that even if the issues are sufficiently common and
predominate, the defenses raised are not. The Dealers argue that in each separate sale, there may
have been additional oral discussions that could figure into determining whether a particular
customer was informed about the tax, or that some sales could have been negotiated for a final
figure, into which the tax was added by the dealer--while others were cash prices for the vehicle
itself, to which the tax was thereafter added. 

 In support of this position, the Dealers rely on Carney, 37 S.W.3d at 38. In that case, the
court reversed a certification because whether the individual class members had actual knowledge
of the purported injury was going to be an integral part of the defendant's defense. The holding in
Carney rested on the lawsuit being based on the individual employees' knowledge of how their pay
schedule was contrived. 

 In this case, the harm is based on allegations that the Dealers had shown the dealers inventory
tax as a tax, which was therefore payable by each customer to a taxing authority. Taxes payable to
the government are inherently different from salaries payable by a company. The citizens of this
country understand that taxes are not negotiable, that they must be paid, and that refusing to pay
taxes results in extremely serious consequences. The question here is whether the documents
presented to each customer indicated that the customer owed tax on the purchase of his or her
automobile. 

 In addition, the discovery timely provided to the trial court indicates the tax was mentioned
or discussed in only a few situations.

 In every case in this class action, the buyer was confronted with an inaccurately described
line-item tax that was usually sandwiched in among legitimate taxes payable to the state by the
buyer. Further, discovery shows that ninety-eight percent of the Dealers reported that in all but a few
transactions, there was no discussion of the tax charge, and it is unlikely that oral representations
would be admissible to add to or detract from the written contract in any event. 

 Under proper application of these considerations, we find the trial court did not abuse its
discretion in determining that common issues existed in the conspiracy claim or in concluding that
those issues predominated over individual issues.

 The only remaining major issue involves the Dealers' contention that the DTPA claim cannot
be tried as a class action because there are issues of reliance involved that must be individually
proven in separate trials. The two appeals presently before this court involve different versions of
the Act. In this appeal, the post-1995 version of the Act is involved.

The statute reads as follows:

 (a) A consumer may maintain an action where any of the following constitute
a producing cause of economic damages or damages for mental anguish:

 (1) the use or employment by any person of a false, misleading, or deceptive
act or practice that is:

 (A) specifically enumerated in a subdivision of Subsection (b) of
Section 17.46 of this subchapter; and

 (B) relied on by a consumer to the consumer's detriment, . . . .


Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon 2002) (emphasis added). This version of the
statute thus requires the plaintiff to prove that the plaintiff relied on the misleading act. Dealers
argue that the class representative is therefore in the position of being required to prove in countless
mini-trials that each class member "relied" on the representations of the Dealers before the class
member can recover. Therefore, they argue, this individual issue is of such importance that the
common issues cannot predominate over it.

 Their argument, however, itself focuses on the notion that reliance must be individually
proven before a jury can conclude it is the only (or at least the main) reason for acceding to the
misrepresentation. The argument is a different flavor of the reliance claim and is based on Peltier
Enter., Inc. v. Hilton, 51 S.W.3d 616 (Tex. App.-Tyler 2000, pet. denied). The Peltier case
concerned the dealers' failure to disclose to consumers they were receiving a kickback (or
participation fee) for steering consumers to a particular loan. The result was that the consumer paid
a higher interest rate than the bank charged, with the dealer taking the percentage between the bank's
charge and the amount paid by the consumer. 

 In connection with a DTPA Section 17.46(b)(23) (presently renumbered at (b)(24)) (6) action,
the opinion reviewed certification. That section is not the section in question here and contains
different and stronger language. It requires proof of a failure to disclose information, intended to
induce a consumer into a transaction "into which the consumer would not have entered had the
information been disclosed." That requirement is not part of the statute and need not be met for this
case. This variation of a "but for" requirement does not exist under the portion of the DTPA at issue
in this case. 

 That opinion also discussed Section 17.45(5), (7) which also requires a showing of what the
consumer could have or would have done if he had known the information. That requirement also
does not exist in this case. Peltier is not controlling.

 The Dealers also take the position that at the least each class member must demonstrate he
or she relied on the misrepresentation. The allegations are that the consumers paid a tax they did not
owe because they were billed for the tax by the Dealers. That alone is an allegation of reliance. 
They direct this court to federal opinions involving other statutory forms of recovery that require
some type of reliance to justify damages. They also direct this court to two Texas cases that only
allowed class certifications to proceed on proof that the misrepresentations were identical in all
cases. Those opinions also contained language warning about the danger of disintegration of a class
lawsuit if proof of reliance turned out to require myriads of individual trials to show reliance on an
individual basis. See Henry Schein, Inc. v. Stromboe, 28 S.W.3d 196 (Tex. App.-Austin 2000, pet.
dism'd w.o.j., reh'g of pet. granted); Life Ins. Co. of Southwest v. Brister, 722 S.W.2d 764 (Tex.
App.-Fort Worth 1986, no writ). 

 Dealers focus on language abstracted from Brister that "fraud in which there were material
variations in the representations made or in the kinds or degrees of reliance involved are not suitable
for class action." Brister, 772 S.W.2d at 774. 

 In this case, if we take the Brister language as our mantra, there is no indication from the
discovery that there are any material variations in the written representations made. We find the
Dealers' argument interesting, but also recognize that in any other context, the Dealers would likely
prefer that we not create a new rule of law allowing anything outside the written contract to be
considered in determining the viability or intent of an unambiguous contract. (8)

 The Houston First Court of Appeals recently addressed a similar matter. In that case, a
storage company billed its customers for insurance, which the company then did not purchase. The
court found the written misrepresentation to justify class certification, while acknowledging that
other cases had held that oral misrepresentations have been found not to justify class certification
because they necessarily required separate proof. The court found that the charge itself was
sufficient for the purpose of certification. Graebel/Houston Movers, Inc. v. Chastain, 26 S.W.3d 24
(Tex. App.-Houston [1st Dist.] 2000, pet. dism'd wo.j.). The court concluded that the basis of the
lawsuit was the defendant's uniform conduct in its billing practices and affirmed the certification.

 Sole causation is not required either by statute or case law. It therefore appears that a single
producing cause (or reliance) issue--or perhaps a very few variations on that theme--would be
sufficient to fairly cover all of the defendants. Under those circumstances, we conclude the trial
court did not abuse its discretion by certifying the class and entering a trial order. 

 The allegations are common to all of the plaintiffs. The plaintiffs may clearly seek to prove
that the written statements are misrepresentations, while the defendants' attempts to prove otherwise
amount to, at most, marginally differing defenses. As pointed out in Chastain, Texas courts have
held that even if defendants have a defense against claims by some (but not all) class members, the
class may still be certified. Chastain, 26 S.W.3d at 30 (citing Sun Coast Res., Inc., 967 S.W.2d at
537; Microsoft Corp. v. Manning, 914 S.W.2d 602, 613 (Tex. App.-Texarkana 1995, writ dism'd)).

 The Dealers also argue that evidence about oral statements should be admitted because the
parol evidence rule does not apply to DTPA cases, citing Weitzel v. Barnes, 691 S.W.2d 598, 600
(Tex. 1985). That case states categorically that where a DTPA action is based on oral
misrepresentations, traditional contractual notions did not apply and the parol evidence rule did not
prevent their introduction.

 This case is based on written misrepresentations, not oral misrepresentations. That difference
alone sets this case completely outside the reasoning of Weitzel. It seems entirely appropriate under
those circumstances to hold the writer of a contract to the contract which he or she prepared without
allowing evidence of extraneous oral statements. 



The Trial Plan

 The Dealers also argue the trial court abused its discretion by certifying the class without
adopting a proper trial plan after the requisite "rigorous analysis." The arguments raised under that
contention are the same arguments disposed of above. Because we find that typicality and
predominance have been shown, and because the trial court has laid out in broad strokes the way in
which the proceedings would continue, we find the trial plan is adequate for this stage of the
proceeding.

Conclusion

 Our review is not a de novo review of the evidence; it is an examination of whether the trial
court abused its discretion in certifying the class based on the evidence and pleadings. We are
required to be certain the trial court did not simply "certify first" without engaging in a serious
analysis of the action and the apparent propriety of certifying the class. We are further aware the trial
court may modify the class definition or otherwise alter its ruling at any time during the proceeding
should it become apparent such a change is necessary. 

 As set out above, it appears that the trial court could reasonably come to the conclusion that
common issues predominate in this lawsuit and that the case can be most expeditiously tried as a
class action. We further note the amount of money involved is set out on each separate sales sheet,
and may be easily and quickly ascertained and applied, as may be an arbitration provision, should
any be contained within an individually written contract. Those are easily determined clerical
matters and will not prevent certification.

 The trial court did not abuse its discretion by certifying the class. The order of certification
is affirmed.



 Ben Z. Grant

 Justice


Date Submitted: October 1, 2002

Date Decided: October 25, 2002


Publish
1. Tex. R. App. P. 28.1; Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon Supp. 2002).
2. All class actions must satisfy the following four threshold requirements: (1) the class is so
numerous that joinder of all members is impracticable, (2) there are questions of law or fact common
to the class, (3) the claims or defenses of the representative parties are typical of the claims or
defenses of the class, and (4) the representative parties will fairly and adequately protect the interests
of the class. Tex. R. Civ. P. 42(a); see Southwestern Ref. Co. v. Bernal, 22 S.W.3d 425, 433 (Tex.
2000). 

3. Certification is not irreversible, and the trial court may alter, amend, or withdraw class
certification at any time before final judgment. Tex. R. Civ. P. 42(c)(1); see W. Teleservices, Inc.
v. Carney, 37 S.W.3d 36, 40 (Tex. App.-San Antonio, 2000, no pet.); Morgan v. Deere Credit, Inc.,
889 S.W.2d 360, 365 (Tex. App.-Houston [14th Dist.] 1994, no writ).
4. In relevant part, the rule reads as follows:


 RULE 42 CLASS ACTIONS


 (a) Prerequisites to a Class Action. One or more members of a class may
sue or be sued as representative parties on behalf of all only if (1) the class is so
numerous that joinder of all members is impracticable, (2) there are questions of law,
or fact common to the class, (3) the claims or defenses of the representative parties
are typical of the claims or defenses of the class, and (4) the representative parties
will fairly and adequately protect the interests of the class.


 . . . .


 (b) Class Actions Maintainable. An action may be maintained as a class
action if the prerequisites of subdivision (a) are satisfied, and in addition:


 . . . .


 (4) the court finds that the questions of law or fact common to the members
of the class predominate over any questions affecting only individual members, and
that a class action is superior to other available methods for the fair and efficient
adjudication of the controversy. The matters pertinent to the findings include: (A)
the interest of members of the class in individually controlling the prosecution or
defense of separate actions; (B) the extent and nature of any litigation concerning the
controversy already commenced by or against members of the class; (C) the
desirability or undesirability of concentrating the litigation of the claims in the
particular forum; (D) the difficulties likely to be encountered in the management of
a class action.
5. Noting that courts, before its decision in Bernal, were certifying class actions without
conducting the proper analysis into each requirement of Rule 42, notably section (b)(4) of the rule,
the Texas Supreme Court expressly rejected an "approach of certify now and worry later." Bernal,
22 S.W.3d at 435.
6. Act of May 30, 1993, 73rd Leg., R.S., ch. 570, § 6, 1993 Tex. Gen. Laws 2125, amended
and renumbered by Act of May 25, 2002, 77th Leg., R.S., ch. 962, § 1, 2001 Tex. Gen. Laws 1929,
1931, Act of May 27, 2001, 77th Leg., R.S., ch. 1229, § 27, 2001 Tex. Gen. Laws 2822, 2823.
7. Tex. Bus. & Com. Code Ann. § 17.45(5) (Vernon 2002).
8. Texas courts have held that the existence of differing affirmative defenses will not prevent
class certification. Graebel/Houston Movers, Inc. v. Chastain, 26 S.W.3d 24, 30 (Tex.
App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.); see Sun Coast Res., Inc. v. Cooper, 967 S.W.2d
525, 534 (Tex. App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.); Microsoft Corp. v. Manning, 914
S.W.2d 602, 613 (Tex. App.-Texarkana 1995, writ dism'd).