In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00043-CV


______________________________




PERRY FEAGINS, Appellant



V.



TYLER LINCOLN-MERCURY, INC., D/B/A JACK O'DIAMONDS, Appellee




 


On Appeal from the 241st Judicial District Court


 Smith County, Texas


Trial Court No. 06-2515-C




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 When Perry Feagins bought a new Honda Civic from Tyler (1) Lincoln-Mercury, Inc., d/b/a
Jack O'Diamonds (2) (Dealer), he opted to have the purchase financed. To accomplish his purchase
and financing, Feagins signed a preprinted, multipage "Retail Installment Sale Contract" prepared
by Dealer.

 The contract sets out the terms of an installment sale by Dealer to Feagins and bears an
assignment of the contract by Dealer to Household Automotive Finance Corporation, a third-party
lender, to which Feagins was to make payments. Among various terms and disclosures, the contract
discloses that the rate of interest, termed the "annual percentage rate," on the financed balance is
12.89 percent. On the contract, a charge of $31.34 is labeled "Dealer's Inventory Tax Paid to Seller,"
and a charge of $50.00 is labeled "Documentary Fee . . . Paid to Seller."

 Feagins sued Dealer, alleging misrepresentations--both affirmative statements of fact and
fraudulent nondisclosures--related to the "Dealer's Inventory Tax," the rate of interest, Dealer's gain
on the resale of the contract to the third-party lender, and the "Documentary Fee." He sought to
establish causes of action that these various affirmative representations and nondisclosures
constituted fraud, violated the Texas Finance Code, and triggered a right to injunctive relief under
the Texas Deceptive Trade Practices Act (DTPA).

 Dealer filed a motion for summary judgment, combining both traditional and no-evidence
motions for summary judgment. Dealer argued that there was no evidence to support at least one
element of each of the causes of action and that its summary judgment evidence proved conclusively
that no cause of action was viable. The trial court granted Dealer's motion.

 Feagins contends on appeal (3) that Dealer did not provide summary judgment evidence
sufficient to support a traditional motion, that Feagins provided sufficient evidence to defeat a no-evidence motion, and that his DTPA cause of action was not addressed by either motion. Thus,
Feagins argues, the judgment should be reversed. We agree with him in part because we hold that
(1) summary judgment on the causes of action under the Texas Finance Code was proper, (2) fact
issues exist on the alleged affirmative misrepresentations, and (3) Dealer had no duty regarding the
alleged fraudulent nondisclosure.

(1) Summary Judgment on the Causes of Action Under the Texas Finance Code Was Proper

 First, analyzing the allegations as attempts to state causes of action solely under the Texas
Finance Code leads us to conclude the trial court properly included in Dealer's summary judgment
the alleged causes of action under the Code.

 The "Dealer's Inventory Tax": An entry on the contract makes a charge for "Dealer's
Inventory Tax Paid to Seller" in the amount of $31.34. Feagins alleges that the entry was misleading
because the amount was not a tax and was payable to the State, not by Feagins, but by Dealer.
Whether those aspects of that entry are misrepresentations is addressed below, but, as we explain
below, those allegations do not make out a violation of the Texas Finance Code.

 The Texas Consumer Credit Commissioner issued an advisory letter dated December 22,
1993, and an interpretation dated January 24, 1994. Both documents conclude that the "Dealer's
Inventory Tax" is a tax and that the law authorizes passing it on to a customer along with a
"meaningful caption" such as "Dealer's Inventory Tax"--precisely what Dealer did in Feagins'
transaction.

 Title 4 of the Texas Finance Code--entitled the Texas Credit Title and spanning sections
301.001-371.306--is  not  violated  if  the  challenged  action  "conforms  to  an  interpretation  of"
Title 4 by the Consumer Credit Commissioner under Section 14.108 of the Texas Finance Code, so
long as the interpretation is in effect at the time of the challenged act or omission. Tex. Fin. Code
Ann. § 303.401 (Vernon 2006). Because of that statutory authority of the Consumer Credit
Commissioner and the above-referenced rulings, we hold that the Texas Finance Code was not
violated by the entry charging the "Dealer's Inventory Tax."

 The Rate of Interest: Feagins alleges, not that the rate of interest exceeded some lawful
maximum rate, but that it was misrepresented as being the best rate Feagins could get from the third-party lender. Feagins points to no provision of the Texas Finance Code that would make such a
representation a violation of the Texas Finance Code. We find no violation of the Code in this
respect.

 Dealer's Gain on the Resale of the Contract: Feagins alleges that, from the interest rate
margin between that charged on the contract and the effective rate earned by the third-party lender,
Dealer reaped a profit of $556.20 and fraudulently concealed that profit from Feagins. Again,
Feagins fails to point out any provision of the Texas Finance Code that this practice allegedly
violates. In fact, Section 348.301 of the Texas Finance Code applies to this type of transaction and
provides that neither a dealer nor a third-party lender has the obligation to disclose to the customer
the terms of the assignment of a contract to the third-party lender. We find no violation of the Code
in this respect.

 The "Documentary Fee": Feagins alleges that the $556.20 Dealer made in selling Feagins'
contract to a third-party lender at a premium is a charge to Feagins for "documentation"--citing the
deposition of James Bragg--and is, therefore, an improper addition to the maximum $50.00
elsewhere charged to Feagins for "Documentary Fee . . . Paid to Seller," thus violating the Texas
Finance Code. There are two reasons why we disagree.

 First, the charge to Feagins that resulted in this profit to Dealer was contract interest at 12.89
percent, as to which there is no allegation of any violation of the Texas Finance Code. There was
no charge to Feagins in the amount of $556.20; that sum was collected by Dealer from the third-party
lender as a consequence of the contract resale transaction.

 Second, it seems clear to us that the Texas Finance Code contemplates that the "documentary
fee" is for documentation needed in every transaction, most notably doing the paperwork to get a
certificate of title properly applied for and issued to the buyer. It is chargeable whether or not there
is any loan documentation to be done. We find no rule that a "documentary fee" is chargeable only
when a vehicle is being purchased by way of installment sale financing. That confirms to us that the
"documentary fee" is chargeable even in cash sales. And that, as a matter of law, distinguishes the
"documentary fee" from any financing charges or profits related to financing. Though there is
summary judgment evidence that Dealer's profit on the resale of Feagins' contract was for preparation
of the retail installment sale contract, that charge is not properly characterized as an added
"Documentary Fee." We find no violation of the Code in this respect.

(2) Fact Issues Exist on the Alleged Affirmative Misrepresentations

 We now consider the two alleged affirmative misrepresentations--that the "Dealer's
Inventory Tax" was a tax Feagins was obligated to pay to the State and that the rate of interest
charged to Feagins was the best rate available and, by implication, was the rate being charged
Feagins by the third-party lender--to determine if Dealer's summary judgment was proper on the
claimed causes of action for affirmative misrepresentations. We hold that the summary judgment
was improper in this regard.

 A party commits fraud by (1) making a false, material misrepresentation (2) that the party
either knows to be false or asserts recklessly without knowledge of its truth (3) with the intent that
the misrepresentation be acted upon, (4) and the person to whom the misrepresentation is made acts
in reliance upon it (5) and is injured as a result. (4) Formosa Plastics Corp. USA v. Presidio Eng'rs &
Contractors, Inc., 960 S.W.2d 41, 47-48 (Tex. 1998) (op. on reh'g); Reynolds v. Murphy, 188
S.W.3d 252, 270 (Tex. App.--Fort Worth 2006, pet. denied) (op. on reh'g).





 

 There is summary judgment evidence (5) that Dealer represented to Feagins he owed a "Dealer's Inventory Tax" and that the 12.89 percent interest rate on the contract was the best rate he
could get from the third-party lender, carrying the implication that the 12.89 percent was the rate
being charged by the third-party lender.

 Dealer's Inventory Tax: We have discussed what the Texas Finance Code has to say about
the Dealer's Inventory Tax and have ruled that the manner in which Dealer handled it in this
transaction did not violate the Code. But determining that Dealer did not violate the Code in this
respect is not tantamount to determining that there was no misrepresentation concerning this item. (6)

 Feagins' summary-judgment affidavit states, "I relied on Defendant's representations to me
. . . that [the Dealer's Inventory Tax] was a tax I owed." Dealer argues that the affidavit was
conclusory and fraudulent, was struck by the trial court, and thus should not be considered. We
disagree. Though the quoted statement is summary, it is not simply conclusory. The fact that it
contradicts Feagins' deposition does not stop the affidavit from setting up a fact issue on this point. 
See Pierce, 226 S.W.3d at 716-17 (ruling from jurisdiction from which this case has been
transferred). Therefore, the no-evidence and traditional summary judgment on this matter was
improperly rendered. (7)

 The Interest Rate: We reach essentially the same result as to the rate of interest. Dealer
argues that it did not misrepresent the interest rate to Feagins, largely because the contract itself
states the interest rate as 12.89 percent. This misses Feagins' point, however, as he stated in his
affidavit that he was told he would receive the best rate available to him from Household
Automotive Financial Corporation. The evidence shows that he did not receive the rate effectively
being charged by that third-party lender. Feagins also stated that, had he known that the rate at
which he had been approved was 11.89 percent, he would not have agreed to pay 12.89 percent, or
sign the contract, or purchase the vehicle.

 The summary judgment proof has set up an issue of fact for determination, and summary
judgment was improperly rendered on this point.

 Feagins also sought injunctive relief under the DTPA. Feagins points out in his appellate
brief that Dealer's motion for summary judgment does not refer in any respect to his DTPA
allegations; thus, he argues, summary judgment against his claim on that issue was not properly
rendered. That is not precisely correct, as the motion does ask, in a single sentence, that the motion
for injunction be denied. The sole argument raised under that contention was that, if the fraud claims
failed as a matter of law, then no injunctive relief could properly be granted. But, since we hold that
the summary judgment was improper as to the affirmative misrepresentation causes of action, it was
also improper on the resulting requests for injunctive relief under the DTPA as it may apply to those
alleged affirmative misrepresentations.

(3) Dealer Had No Duty Regarding the Alleged Fraudulent Nondisclosure

 Feagins alleges that Dealer fraudulently concealed the fact that it made a profit of $556.20
on the resale of his contract to the third-party lender and that, had he known of the profit, he would
not have entered into the transaction. Part of the summary-judgment evidence is a "commission"
sheet attached to the approval documentation, indicating that a commission was paid to Dealer of
the $556.20--approximately half of the resale premium paid to Dealer resulting in a one percentage
point difference between the contract rate and the effective interest rate being earned by the third-party lender.

 Dealer's sales manager, Bragg, was deposed, and his fairly brief deposition is also part of the
summary judgment proof. He was questioned about the Feagins transaction and forms used in it and
explained that Dealer had an indirect lending agreement with Household Automotive Financial
Corporation. Bragg identified Dealer as the creditor that assisted in arranging the financing. Though
his explanation in his deposition was not carefully phrased, Bragg explained the difference between
the rates is essentially that the "buy rate" was 11.89 percent, which is the effective rate the third-party
lender receives after paying Dealer a premium for the retail installment sales contract, while the
actual rate to Feagins was 12.89 percent. A document, titled "Approved-Structure" and generated
by the third-party lender, stated that it had approved financing for Feagins at a "Buy Rate" of 11.89
percent. Bragg described the $556.20 as Dealer's commission on the interest rate differential.

 Dealer argues that there was no evidence that it had any duty to disclose any facts to Feagins,
no evidence that it was deliberately silent as to such facts, that Feagins relied on Dealer's
nondisclosure, or that Feagins was injured by any nondisclosures. The part of Dealer's argument that
is viable is the argument of no duty. As discussed above, there is summary judgment proof that
Feagins relied on the completeness and accuracy of the representations made to him and that he
signed the contract only because of them, language broad enough to include the concealment of a
"side" profit by Dealer on the resale of the contract. Thus, there is neither a lack of any evidence of
Feagins' reliance or injury, nor conclusive proof that Feagins did not rely or was not injured. A
summary judgment is improper here on the basis of lack of reliance or injury.

 This theory of tort liability is based on the concept that a misrepresentation may also consist
of the concealment or nondisclosure of a material fact when there is a duty to disclose. Custom
Leasing, Inc. v. Tex. Bank & Trust Co., 516 S.W.2d 138, 142 (Tex. 1974); Reynolds, 188 S.W.3d
at 270. The duty to disclose arises when one party knows that the other party is ignorant of the true
facts and does not have an equal opportunity to discover the truth. Reynolds, 188 S.W.3d at 270. 
Whether a duty to disclose exists is a question of law. Bradford v. Vento, 48 S.W.3d 749, 755 (Tex.
2001). However, that question of law is dependent on the application of facts, and in the context of
a no-evidence summary judgment, we are simply looking to see first if there is any evidence of facts
that might support the imposition of such a duty. In the context of a traditional motion, we look to
see if Dealer conclusively proved that it had no such duty.

 Several courts of appeals have held that a general duty to disclose information may arise in
an arm's-length business transaction when a party makes a partial disclosure that, although true,
conveys a false impression. See, e.g., McCarthy v. Wani Venture, A.S., 251 S.W.3d 573, 585 (Tex.
App.--Houston [1st Dist.] 2007, no pet.). (8)

 As astutely pointed out by the Fort Worth court, "fraud is usually not discernible by direct
evidence and is usually so covert or attendant with such attempts at concealment as to be incapable
of proof other than by circumstantial evidence." W.L. Lindemann Operating Co. v. Strange, 256
S.W.3d 766, 776 (Tex. App.--Fort Worth 2008, no pet.); see Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 435 (Tex. 1986). Motive, past conduct, and related wrongful acts are thus factors to
be considered. Cotten v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 707 (Tex. App.--Fort
Worth 2006, pet. denied).

 The only real question here is whether Dealer had a duty to speak and nonetheless stayed
silent.

 The Texas Finance Code explicitly provides that neither a dealer nor a third-party lender has
the obligation to disclose to the buyer the terms under which a dealer resells the consumer contract
to the lender. See Tex. Fin. Code Ann. § 348.301 (Vernon 2006). Section 348.301 effectively
insulates Dealer from any liability for failure to affirmatively disclose the terms of the assignment
of contract to the third-party lender. That information, which Dealer was statutorily relieved from
an obligation to disclose to Feagins, included the profit of $556.20. For that reason, summary
judgment was proper on any cause of action springing from Dealer's nondisclosure of that profit.

 We affirm the summary judgment to the extent that it rules against Feagins as to any cause
of action under the Texas Finance Code and as to his causes of action predicated on (a) Dealer's
failure  to  disclose  the  $556.20  profit  on  the  sale  of  Feagins'  retail  installment  sale  contract
or (b) Dealer's charging sums for "documentation" in excess of the $50.00 "Documentary Fee." We
reverse the summary judgment and remand this case to the trial court for further proceedings
consistent with this opinion, as to the alleged affirmative misrepresentations concerning the "Dealer's
Inventory Tax" and those concerning the "best" interest rate; with the result that, on remand, the trial
court should address Feagins' causes of action predicated on those alleged affirmative
misrepresentations, whether the causes of action sound in common-law fraud or seek injunctive
relief under the DTPA.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 29, 2008

Date Decided: November 26, 2008
1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.
2. The separate corporation Jack O'Diamonds, Inc., was nonsuited from this case. It appears
that the proper party is the corporation Tyler Lincoln-Mercury, Inc., d/b/a Jack O'Diamonds.
3. Dealer's motion for summary judgment is not a model of clarity. Counsel are cautioned to
always carefully delineate no-evidence and traditional motions for summary judgment, preferably
into two separate motions. The response is equally imprecise, and briefing from Feagins merges
arguments on multiple theories of recovery together into a single continuous discussion which is
often difficult to parse. That difficulty also appears in Feagins' appellate brief. We have attempted
to separate and analyze the various issues.
4. Thus, a statement is not fraudulent unless the maker knew it was false when he or she made
it or made it recklessly without knowledge of the truth. DeSantis v. Wackenhut Corp., 793 S.W.2d
670, 688 (Tex. 1990).
5. Dealer argues briefly that Feagins' affidavit should be essentially disregarded because the
trial  court  (by  order)  struck  portions  of  the  affidavit  based  on  Dealer's  objections.  See  Tex.
R. Civ. P. 166a(f) (to be competent summary judgment evidence, affidavits must be made on
personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show
affiant is competent to testify to matters stated therein). United Blood Servs. v. Longoria, 938
S.W.2d 29, 30 (Tex. 1997). We apply an abuse-of-discretion standard in reviewing whether a trial
court erred in admitting or excluding evidence. See City of Brownsville v. Alvarado, 897 S.W.2d
750, 753 (Tex. 1995); Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C., 180 S.W.3d 889, 892
(Tex. App.--Dallas 2005, pet. denied). 

 Three sections of Feagins' affidavit were complained of and struck (or disregarded). 

 First: "I relied on Defendant's representations to me as presented in the contract and buyer's
order that this was a tax I owed." Dealer objected because this was a conclusory statement and
contrary to the contract, which they state Feagins had said (in his deposition) he did not read. The
statement is summary, but not conclusory. It describes Feagins' state of mind--a matter peculiarly
within his own knowledge. Indeed, such a statement is the only real direct evidence of such a matter,
and he clearly could have testified so at trial. As to the aspect that the affidavit conflicts with
Feagins' deposition testimony, that, alone, should not disqualify the affidavit. See Pierce v. Wash.
Mut. Bank, 226 S.W.3d 711, 716-17 (Tex. App.--Tyler 2007, pet. denied) (ruling from jurisdiction
from which this case has been transferred). Under these circumstances, the trial court abused its
discretion by striking this portion of the affidavit. We consider it.

 Second: "I understand from Mr. Bragg's deposition testimony that I was charged an extra
$556.20 by the dealership for documenting my purchase." There is no objection made to this
statement, except that Bragg's deposition should speak for itself. This is not a legitimate objection,
and the trial court abused its discretion by striking that portion of the deposition.

 Third: (the last paragraph of the affidavit) "The dealership told me they would help me
arrange financing and told me that Household Automotive Financial Corporation was my creditor
in this transaction. They negotiated the rate for me and told me that 12.89% was the best rate
available to me from Household Automotive Financial Corporation. If I had known what I now
know, that the rate I was approved at was 11.89% which is less than the rate I was told, I would
never have agreed to sign the installment contract or purchase the vehicle." Dealer objected because
the paragraph was conclusory and clearly fraudulent, stating that Feagins' deposition testimony was
that he could not remember at all what he was told by anyone at the dealership and that the last
paragraph did not lay a foundation for his conclusory statements as to what the "dealership told him." 
Dealer argued that a dealership could not tell anyone anything, only individuals, and complains that
Feagins did not identify any individual who told him anything. 

 

Dealer's description of Feagins' testimony as shown in two pages of his deposition is not entirely
accurate. Feagins actually stated that he did not know whether anyone at the dealership had told him
anything that was not true, that the occurrences had been two years earlier, and that he had a bad
memory. As to the first, the entire case is about hidden charges; thus, he would not be expected to
know whether he was told things that were untrue. As to the second, memory does fade with time,
and the third comment is no more than that. Further, the questions asked were confounding at best.

 Q. Okay. So there is no reason for anybody to believe that you're going to be able
to testify at the time of trial that anybody lied to you about anything at Jack
O'Diamonds; is that correct?

 A. I don't know.

 Further, although a dealership certainly cannot tell anyone anything (to use Dealer's
terminology), it does speak through its agents and employees, and Feagins' failure to identify
individuals is a weakness in his affidavit. That would not, however, make his statement
inadmissible, but only subject to cross-examination.

 In the absence of any sustainable objection, the trial court abused its discretion by striking
these portions of the affidavit. Accordingly, although the affidavit is generally not central to our
analysis, we consider it in its entirety as part of our review.
6. The "Dealer's Inventory Tax" has been a sticky problem since its inception, since motor
vehicle dealers, on which the tax was levied, began passing the tax through to their customers and
calling it a "tax." This Court discussed those actions in Alford Chevrolet-Geo v. Jones, 91 S.W.3d
396, 404 (Tex. App.--Texarkana 2002, pet. denied).
7. In the no-evidence portion of its motion for summary judgment, Dealer listed the elements
of fraud, and first stated without elaboration that there was no evidence of any element of the cause
of action. This statement is inadequate to meet the particularity requirements of a motion for
summary judgment. See Tex. R. Civ. P. 166a(i). Dealer further stated that "plaintiff cannot prove"
a false representation, reliance on the representation, or injury resulting therefrom. This misstates
the requirements of a no-evidence summary judgment. The question is not whether Feagins can
prove his case, the question is whether there is any summary-judgment evidence of specific elements. 
This portion of the motion does, however, provide the specificity required by the rule.
8. Citizens Nat'l Bank v. Allen Rae Invs., 142 S.W.3d 459, 476-77 (Tex. App.--Fort Worth
2004, no pet.); Hoggett v. Brown, 971 S.W.2d 472, 487 (Tex. App.--Houston [14th Dist.] 1997, 
writ denied); Ralston Purina Co. v. McKendrick, 850 S.W.2d 629, 636 (Tex. App.--San Antonio
1993, writ denied).



od @3 21600 pixelHeight"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00066-CR

                                                ______________________________

 

 

                                         MARVIN YASTER,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 3rd Judicial District Court

                                                          Anderson
County, Texas

                                                            Trial
Court No. 29591

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Marvin
Yaster pled guilty to aggravated assault of Carol Beningo with a deadly weapon
and received deferred adjudication community supervision for a period of five
years.[1]  Under the first condition of community
supervision, Yaster was instructed not to commit an offense against the laws
of this State.  The State moved to
revoke community supervision and proceed with adjudication of guilt alleging,
among other violations, that Yaster failed to comply with the first ground of
community supervision by committing family violence assault causing bodily
injury to Beningo and interfering with her ability to place an emergency 9-1-1 telephone
call.  After a hearing, the trial court
adjudicated Yasters guilt for aggravated assault with a deadly weapon,
sentenced him to ten years imprisonment, and ordered him to pay a $1,000.00
fine.[2]    

            Yaster
complains that:  (1) the trial courts
judgment incorrectly reflects his plea of not true to allegations contained
within the motion to adjudicate; (2) the trial courts judgment fails to list
the ground upon which community supervision was revoked; (3) the evidence was
insufficient to revoke community supervision; and (4) the trial court erred in
failing to conduct a punishment hearing after adjudication of guilt.  We affirm the trial courts judgment, as
modified.  

 

 

 

I.         Trial
Courts Written Order Referenced a Ground for Revocation of Community     Supervision

 

            We first
address Yasters complaint that the trial court erred in failing to specify the
ground upon which it revoked community supervision and proceeded to adjudication.  The transcript of the hearing reveals that
the trial judge did not orally pronounce the condition of community supervision
violated.  The trial judge made only the
following statement:  Im going to grant
the States Motion to Adjudicate.  The
prior order of this Court granting him probation is hereby revoked.  I hereby find and adjudge him guilty as
charged of the offense of aggravated assault with a deadly weapon.  

            Because this
type of hearing is administrative in nature, procedural and evidentiary
requirements are not enforced as strictly as they would be in a criminal trial.
 Montoya
v. State, 832 S.W.2d 138, 142 (Tex. App.Fort Worth 1992, no pet.) (citing Bradley v. State, 564 S.W.2d 727, 729
(Tex. Crim. App. 1978), affd after
abatement, 608 S.W.2d 652 (Tex. Crim. App. 1980)).  Statutes governing proceedings upon a motion
to revoke community supervision and proceed to adjudication do not require a
trial court to orally pronounce its findings in support thereof, and Yaster
does not argue that an oral pronouncement was required.  Tex.
Code Crim. Proc. Ann. art. 42.12, §§ 5(b), 21, 23 (Vernon Supp. 2010).  

            Instead,
Yaster points to the transcript in support of his contention that none of the
four judgments signed by the trial court judge state any ground or grounds upon
which the Appellants community supervision was revoked.  However, the written judgment contains the
following: Defendant violated the terms and conditions of community
supervision as set out in the States ORIGINAL Motion to Adjudicate Guilt as
follows: 1.  The number 1
corresponds with paragraph 1 of the Motion to Proceed With Adjudication of
Guilt and Sentence.  Thus, the trial
court found Yaster violated the first condition that he refrain from violating
any law as alleged in the motion to adjudicate. 
We find Yasters first point of error without merit.  

II.       Trial Courts Revocation Was Based on
Sufficient Evidence

 

            Next, Yaster
complains that the evidence was insufficient for the trial judge to find that he
violated a condition of community supervision.  The determination of an adjudication of guilt
is reviewable in the same manner as that used to determine whether sufficient
evidence supported the trial courts decision to revoke community supervision.  See Tex. Code Crim. Proc. Ann. art. 42.12,
§ 5(b).  While the decision to revoke
community supervision rests within the discretion of the trial court, it is not
absolute.  In re T.R.S., 115 S.W.3d 318, 320 (Tex. App.Texarkana 2003, no
pet.).  To revoke community supervision,
the State must prove every element of at least one ground for revocation by a
preponderance of the evidence.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 10 (Vernon Supp. 2010); T.R.S., 115
S.W.3d at 320; Johnson v. State, 943 S.W.2d
83, 85 (Tex. App.Houston [1st Dist.] 1997, no pet.).  Preponderance of the evidence has been
defined as the greater weight and degree of credible testimony.  T.R.S.,
115 S.W.3d at 320.  

            In a
revocation hearing, the trial judge is the sole trier of the facts and
determines the credibility of the witnesses and the weight to be given to the
testimony.  T.R.S., 115 S.W.3d at 321; Lee
v. State, 952 S.W.2d 894, 897 (Tex. App.Dallas 1997, no pet.); Johnson, 943 S.W.2d at 85.  Considering the unique nature of a revocation
hearing and the trial courts broad discretion in the proceedings, the general
standards for reviewing sufficiency do not apply.  Pierce
v. State, 113 S.W.3d 431, 436 (Tex. App.Texarkana 2003, pet. denied).  Instead, we review the trial courts decision
regarding community supervision revocation for an abuse of discretion and
examine the evidence in a light most favorable to the trial courts order.   T.R.S.,
115 S.W.3d at 321 (citing Garrett v.
State, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981)); Pierce, 113 S.W.3d at 436.  If
the greater weight of credible evidence creates a reasonable belief Yaster has
violated a condition of his community supervision, the trial court did not
abuse its discretion and its order must be upheld.  Pierce,
113 S.W.3d at 436 (citing Scamardo v.
State, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)).  If the States proof is sufficient to prove
any one of the alleged community supervision violations, the revocation should
be affirmed.  T.R.S., 115 S.W.3d at 321 (citing Stevens v. State, 900 S.W.2d 348, 351 (Tex. App.Texarkana 1995,
pet. refd)).

            Yaster
committed the offense of assault if he intentionally, knowingly, or recklessly
caused Beningo, a member of the same household, bodily injury.  Tex.
Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2010); Tex. Fam. Code Ann. § 71.004 (Vernon
2008).  He committed the offense of
interference with an emergency telephone call if he knowingly prevented or
interfered with Beningos ability to place a 9-1-1 emergency call.  Tex.
Penal Code Ann. § 42.062(a) (Vernon Supp. 2010).  An emergency under this section means a
condition or circumstance in which any individual is or is reasonably believed
by the individual making a telephone call to be in fear of imminent assault or
in which property is or is reasonably believed by the individual making the
telephone call to be in imminent danger of damage or destruction.  Tex.
Penal Code Ann. § 42.062(d) (Vernon Supp. 2010).  

            The trial
court heard the following evidence: 
Officer Michael Mitchell was called to a residence where Yaster and
Beningo cohabitated.  He testified that
upon his arrival, a nervous, upset, and frightened Beningo was standing on her
front porch . . . She advised me that her and Marvin had been in a verbal altercation.  When she advised him she was going to call
9-1-1, he tackled her and caused her to strike her head on the floor, knocking
the telephone from her hand.  

            Beningo
testified, [W]e got in an argument.  And
I went to call 9-1-1, and when I did, he pushed me.  And when he pushed me, I fell down, and the
phone went flying.  Beningo claimed that
they both had been drinking and that even though she hit her head on the floor
after being pushed, it only hurt for a minute or two.  She clarified that the argument was verbal
and that Yaster didnt hit me or anything, statements confirmed by the
dispatch audio recording.  

            The
recording transcript demonstrated a struggle, Yasters threats to throw Beningo
across the room, Beningos realization that the 9-1-1 dispatcher was on the telephone,
her pronouncement to Yaster that [y]oure going to jail tonight for assault,
and her statement to the dispatcher that Marvin hit me.  She told the dispatcher, He pushed me down
on the floor because I told him to get memy stuff out of the computer.  He put something in there today thats
suppose [sic] to give my computer a virus.[3]  [H]e says its going to mess my computer up.
Beningo explained, I didnt even know that call went through, . . . .because
he yanked the phone . . . .[and] [i]t broke. 
  

            The trial
court, acting as fact-finder, could have determined the evidence demonstrated
that Yaster pushed Beningo and caused her to hit her head, and/or that Yaster
interfered with Beningos ability to place an emergency 9-1-1 telephone call,
based upon the belief that her computer was being destroyed, and her fear of
imminent assault by pushing her and breaking the telephone.  Viewing the evidence in a light most
favorable to the trial courts order, we conclude the trial court did not abuse
its discretion in finding either assault causing bodily injury to Beningo,
and/or interference with an emergency telephone call by a preponderance of the
evidence.  

III.      Trial Court Afforded Opportunity to Present
Mitigating Evidence on Punishment

 

            Next,
Yaster complains that the trial court failed to conduct a punishment hearing
after adjudicating guilt.   Section 23(a)
of Article 42.12 of the Texas Code of Criminal Procedure states that [i]f
community supervision is revoked after a hearing under Section 21 of this
article, the judge may proceed to dispose of the case as if there had been no
community supervision.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 23.  Thus, when a trial court finds
that an accused has committed a violation as alleged by the State and
adjudicates a previously deferred finding of guilt, the court must then conduct
a second phase to determine punishment. 
Issa v. State, 826 S.W.2d 159,
161 (Tex. Crim. App. 1992).  The
defendant is entitled to a punishment hearing . . . and the trial judge must
allow the accused the opportunity to present evidence.  Id.  

            After
adjudication, the trial court asked if there was [a]ny objection to sentencing
from either party, to which Yasters attorney replied, No objection.  He also stated there was no reason the court
should not sentence Yaster other than . . . we dont think hes guilty.  The court next asked Yaster if he had anything
[he] wish[ed] to say, to which he replied, Im not guilty.  It appears that Yaster was presented with an
opportunity to object or to provide evidence in mitigation of punishment.  At this stage, if Yaster wanted an
opportunity to present evidence and argument on the question of punishment, it
was incumbent upon him to ask for that opportunity and to be ready to present
such evidence and argument as soon as the trial court announced its finding
that he had violated the conditions of his probation.  Euler
v. State, 218 S.W.3d 88, 91 (Tex. Crim. App. 2007) (reasoning that [p]art
of being prepared for a revocation hearing is being prepared to present
evidence and argument on the question of the proper disposition in the event
that the trial court finds that the conditions of probation have been violated).  Because Yaster did not present such evidence
when given the opportunity, error was not preserved and he may not complain of
the lack of a punishment hearing for the first time on appeal.  Tex. R. App. P. 33.1; Hardeman v. State, 1 S.W.3d 689, 69091 (Tex. Crim. App. 1999) (when
defendant fails, after being given chance to object that no punishment hearing
was held after adjudicating guilt, error is not preserved).  We overrule this unpreserved point of
error.  

 

 

 

 

 

IV.     We
Modify Judgment to Reflect Correct Plea to States Allegations 

 

            Last, the
courts original judgment and three following judgments nunc pro tunc listed
Yasters plea to the motion to adjudicate as true.  This was incorrect, as Yaster pled not true
to the allegations.  The Texas Rules of Appellate
Procedure give this Court authority to reform judgments and correct
typographical errors to make the record speak the truth.  Tex.
R. App. P. 43.2; French v. State, 830 S.W.2d 607, 609 (Tex. Crim.
App. 1992); Gray v. State, 628
S.W.2d 228, 233 (Tex. App.Corpus Christi 1982, pet. refd).  The State agrees that the judgment should be
modified to reflect Yasters plea in accordance with the record.  We hereby modify the trial courts judgment
to reflect a plea of not true to the allegations in the States motion to
revoke community supervision and proceed with adjudication of guilt. 

V.       Conclusion 

 

            We affirm the trial courts
judgment, as modified. 

 

 

 

 

                                                                                                Jack
Carter

                                                                                                Justice

 

Date Submitted:          November
3, 2010      

Date Decided:             November
4, 2010

 

Do Not Publish











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann. §
73.001 (Vernon 2005).  We are
unaware of any conflict between precedent of the Twelfth Court of Appeals and
that of this Court on any relevant issue. 
 See Tex. R. App. P. 41.3.

 





[2]Judgments
nunc pro tunc were entered reducing Yasters sentence from fifteen years
imprisonment to ten years imprisonment.  






[3]Yaster
testified that he was attempting to repair the computer by ridding it of a
virus and that he did not tackle or otherwise hit Beningo.